# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of | No. 52641-7-II |
| V.S., | |
| Appellant. | UNPUBLISHED OPINION |

CRUSER, J. — V.S. appeals the order committing her to involuntary treatment for 180 days, arguing that the State did not present sufficient evidence to support the commissioner's findings of fact and conclusions of law. Specifically, V.S. argues that the State was required to produce evidence sufficient to prove both that she presented a likelihood of serious harm and that she continued to be gravely disabled to extend her involuntary treatment. The State's failure to demonstrate that she presented a likelihood of serious harm by evidence of actual threats, V.S. argues, renders the evidence supporting the conclusion that she was gravely disabled insufficient. The State responds that there was substantial evidence sufficient to support the commissioner's findings and conclusion that V.S. continued to be gravely disabled and that it was not required to also prove that V.S. presented a likelihood of serious harm.

We agree with the State and hold that the State was not required to produce evidence sufficient to show that V.S. posed a likelihood of serious harm because V.S.'s involuntary treatment was not extended under that commitment standard. The trial court's finding that V.S. continued to be gravely disabled as a result of her mental health condition was a sufficient basis under RCW 71.05.320(4)(d) to extend V.S.'s involuntary treatment. The State produced substantial evidence sufficient to support this finding. We affirm the order of involuntary treatment.

FACTS

V.S. was initially admitted to Western State Hospital in June 2017. Prior to her placement at Western State, V.S. resided in an adult family home. Due to deterioration in her mental health, V.S. was taken to St. Clare Hospital and placed on emergency 72-hour detention.

The designated crisis responder from Pierce County observed V.S. at St. Clare Hospital and noted that V.S. was presenting with "mood instability, agitation, [and] tangential & delusional thought processes." Clerk's Papers (CP) at 2. The crisis responder further stated that V.S. was unable to identify her care needs, she "would become verbally aggressive and abusive," and, on at least one occasion, she "began punching nursing staff and would not stop." *Id.* at 4-5. Following a superior court hearing, V.S. was detained at St. Clare for involuntary treatment before she was eventually transferred to Western State.

V.S.'s involuntary treatment was extended several times. While a patient at Western State, V.S. was initially "irritable and non-cooperative with treatment," and she refused blood sugar testing and insulin for her diabetes. *Id.* at 241. In addition, V.S. presented as "very difficult, quite grandiose, and her mood was agitated to aggressive." Verbatim Report of Proceedings (VRP) at

7-8. After some initial vacillation as to the appropriate diagnosis, Dr. Traci Drake, a staff psychologist at Western State, diagnosed V.S. with schizoaffective disorder and a mild vascular neurocognitive disorder. V.S. insisted that she did not suffer from any mental health conditions and refused to take antipsychotic medication.

V.S.'s attending physician filed a medication override petition and V.S. was ordered to accept involuntary treatment with antipsychotic medication. Once V.S. began treatment with Risperidone, V.S.'s condition markedly improved. By August 2018, V.S. had improved so substantially with the antipsychotic medication that her treatment team at Western State had begun a "full court press" to find V.S. placement in an adult family home in the community. *Id.* at 80. V.S. had an extended history of unstable placement in care facilities that included 13 skilled nursing facilities and 23 adult family homes. Drake, along with Dr. Samir Aziz, filed a petition to extend V.S.'s treatment for 180 days while the team found V.S. suitable placement within an adult family home.

Despite V.S.'s improvement, Drake remained concerned that V.S. would be unable to consistently meet her basic health and safety needs if she were released with no support. Drake stated that V.S. would require funding, housing support, and continued mental health care. Drake explained this inability to provide for her basic needs was the result of V.S.'s mental health condition and her neurocognitive disorder. A combination of factors placed V.S. at continuing risk of serious physical harm, including the fact that V.S. "doesn't see the world the same way that the treatment team does." *Id.* at 78. In addition, Drake expressed concern that if V.S. was released without support, she might be unable to manage her diabetes because V.S. has denied that she was properly diagnosed with the disease. Immediately upon release, V.S. would need assistance with

bowel and bladder care. In the longer term, Drake cautioned that if V.S. stopped taking her antipsychotic medications, V.S. may decompensate to the condition she was in prior to her admission at Western State.

V.S. was in agreement with the order to extend her treatment until a suitable adult family home was able to take her and did not raise any objections during the hearing. V.S. informed the commissioner that she was ready for placement.

The trial court, in an order dated August 20, 2018, agreed to extend V.S.'s involuntary treatment for an additional 180 days. The trial court concluded that V.S. continued to be "gravely disabled,"[1] and that "as a result of a mental disorder," which is diagnosed as schizoaffective disorder and a mild vascular neurocognitive disorder, V.S. was "in danger of serious physical harm resulting from the failure to provide for [her] essential needs of health or safety." CP at 217. The trial court further found that V.S. was "currently stable, more reality based" and that a less restrictive alternative treatment was in V.S.'s best interest "when available." *Id*. In addition, the trial court found that V.S. "cooperates with assistance for A.D.L."[2] and that V.S. "does have physical problems." *Id*. Just over one month after the trial court entered the order, V.S. was conditionally released from Western State to an adult family home.[3]

---

[1] Although the commitment form denotes "grave disability" as a finding of fact, "because this is a legal conclusion regarding the ultimate issue, we treat it as the trial court's conclusion." *In re Det. of M.K*, 168 Wn. App. 621, 624 n.4, 279 P.3d 897 (2012).

[2] "A.D.L." refers to "activities of daily living." *See Samantha A. v. Dep't of Soc. & Health Servs.*, 171 Wn.2d 623, 627 & n.3, 256 P.3d 1138 (2011) ("ADLs are defined to include ability to bathe, bed mobility, body care, dressing, eating, locomotion both in the living environment and outdoors, medication management, toilet use, and personal hygiene.").

[3] Although the disputed commitment order is no longer in effect and V.S. has been conditionally released to an adult family home, this case is not moot. *M.K.*, 168 Wn. App. at 629.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE

V.S. argues that the State was required to prove that she was gravely disabled *and* that she posed a likelihood of serious harm as defined under former RCW 71.05.020(17) and (27) (2016), respectively. The State's evidence, V.S. contends, was insufficient to support the necessary findings and therefore the trial court erred in rendering its conclusion that V.S. was gravely disabled.

We disagree and conclude that the State met its burden of proving by clear, cogent, and convincing evidence that V.S. was gravely disabled. The State presented substantial evidence that established the finding that V.S. was in danger of serious physical harm arising from her inability to provide for her basic needs as a result of her mental health condition, and thus the trial court did not err when it concluded that V.S. was gravely disabled.

### A. LEGAL PRINCIPLES

A person who has been previously committed for involuntary treatment must be released at expiration of the treatment period unless a new petition for involuntary treatment is filed. RCW 71.05.320(4). One basis on which involuntary treatment may be extended is if the committed person "[c]ontinues to be gravely disabled." RCW 71.05.320(4)(d). Another alternative basis on which involuntary treatment may be extended is if the committed person continues to present a likelihood of serious harm during the period of court-ordered treatment. RCW 71.05.320(4)(a), (b).

> "Gravely disabled" is defined under former RCW 71.05.020(17) and refers to
>
> a condition in which a person, as a result of a mental disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential

human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

Additionally, treatment may be extended pursuant to the likelihood of serious harm commitment standard on proof of either of two alternate means. First, treatment may be extended if the State proves that during the current period of court-ordered treatment, the person (1) has threatened, attempted, or inflicted physical harm upon the person of another or substantial damage upon the property of another and (2) as a result of a mental disorder, substance use disorder, or developmental disability, presents a likelihood of serious harm. RCW 71.05.320(4)(a). Or treatment may be extended if the State proves that the person was taken into custody as a result of conduct in which he or she attempted or inflicted serious physical harm upon the person of another and continues to present as a result of mental disorder, substance use disorder, or developmental disability, a likelihood of serious harm. RCW 71.05.320(4)(b).

A committed person presents a likelihood of serious harm, as required to extend treatment under RCW 71.05.320(4)(a) and (b), when there is a substantial risk that (1) the committed individual will inflict physical harm upon themselves "as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself," (2) the committed individual will inflict harm on another person, (3) the committed individual will inflict physical harm on the property of others, or (4) the committed individual "has threatened the physical safety of another and has a history of one or more violent acts." Former RCW 71.05.020(27)(a), (b).

"Due process requires that the State must bear the burden of civilly committing an individual by the standard of proof of clear, cogent, and convincing evidence." *In re Det. of M.W.*, 185 Wn.2d 633, 656, 374 P.3d 1123 (2016). Therefore, the State is compelled to meet a higher

6

burden of persuasion than in the ordinary civil case where preponderance of the evidence is the standard. *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). The "ultimate fact in issue must be shown by evidence to be 'highly probable.'" *Id.* Our review is generally "limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment." *Id.*

B. ANALYSIS

    1.    SUFFICIENCY OF THE EVIDENCE OF LIKELIHOOD OF SERIOUS HARM

V.S. argues that in order to extend her involuntary treatment, the State was required to prove that she was gravely disabled *and* that she presented a likelihood of serious harm, relying on former RCW 71.05.240(3)(a) (2016) and former RCW 71.05.020(17) (which defines the term "gravely disabled"), and *In re Detention of D.V.*, 200 Wn. App. 904, 906, 403 P.3d 941 (2017). But V.S. misapprehends the law and the reason for her continued commitment. The State was required to prove only that V.S. was gravely disabled because that is the only commitment standard it alleged in its petition to extend her involuntary commitment.

Former RCW 71.05.240(3) does not support V.S's claim that the State must prove both a likelihood of serious harm and grave disability to extend her involuntary treatment. Former RCW 71.05.240 pertains to 14-day involuntary commitments, but not to extensions of involuntary commitments for up to 90 or 180 days. Thus, former RCW 71.05.240 does not apply to this case. The statute that governs this case is the one that the commissioner relied upon in entering the order of commitment: RCW 71.05.320(4)(d). And even if former RCW 71.05.240 were the controlling statute, it provides that detention may be ordered when a court finds that the individual "presents

a likelihood of serious harm, *or* is gravely disabled." Former RCW 71.05.240(3)(a) (emphasis added).

V.S. has not provided any support for her claim that in order to prove grave disability, the State must also provide evidence of "active behavior" such as "'threats or attempts to commit suicide'" as required to commit someone under the "'[l]ikelihood of serious harm'" standard. Br. of Appellant at 5 (quoting former RCW 71.05.020(17)); *see LaBelle*, 107 Wn.2d at 204. Nevertheless, V.S. relies on *D.V.* to argue that the State failed to meet its evidentiary burden because it did not provide proof of such active behaviors. V.S's reliance on *D.V.* is unavailing because D.V. was committed to 14 days of involuntary treatment under the likelihood of serious harm commitment standard and not the gravely disabled standard. 200 Wn. App. at 905-06. Moreover, *D.V.* did not hold that a court must find a person is gravely disabled *and* presents a likelihood of serious harm as a requirement for an involuntary treatment order, as V.S. suggests. *Id.* V.S.'s contention fails.

2.   SUFFICIENCY OF THE EVIDENCE OF GRAVELY DISABLED

V.S. argues that the State failed to provide sufficient evidence to support the finding that harmful consequences would follow if V.S. were released or that she was unable to make rational choices regarding her treatment. V.S. claims that the failure to support this finding undermines the trial court's conclusion that she was gravely disabled. We disagree and hold that the State provided sufficient evidence that V.S. continued to be gravely disabled.

Former RCW 71.05.020(17) provides two definitions of grave disability. The trial court relied on former RCW 71.05.020(17)(a) when it determined that V.S. was gravely disabled. To satisfy its evidentiary burden of demonstrating a grave disability under this definition, the State

must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded. Furthermore, the failure or inability to provide for these essential needs must be shown to arise as a result of mental disorder and not because of other factors.

*LaBelle*, 107 Wn.2d at 204-05. We will not reverse the trial court's conclusion that an individual is gravely disabled if it is "supported by substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing." *Id.* at 209.

V.S. relies on *M.K.* to argue that the State failed to meet its evidentiary burden. V.S's reliance on this opinion is misplaced. The portion of *M.K.* that V.S. cites in support of her position, in which the court addresses the merits of the appeal, is unpublished and was filed in June 2012. Br. of Appellant at 6-7 (citing *In re Det. of M.K.*, 168 Wn. App. 621, 630, 279 P.3d 897 (2012)). The published portion of the *M.K.* opinion pertains only to mootness. 168 Wn. App. at 630. Unpublished opinions filed prior to March 1, 2013 have no precedential value and are not binding on any court. GR 14.1(a).[4]

The State presented substantial evidence to support the trial court's finding that V.S. was in danger of serious harm resulting from her failure to meet her basic needs that the trial court could have reasonably found to be clear, cogent, and convincing. Dr. Drake testified that without support, V.S. might be unable to manage her diabetes. Drake further explained that V.S. would

---

[4] Even if we were to consider the unpublished portion of *M.K.*, V.S. misconstrues our holding. V.S. asserts that we reversed the commitment order because the State failed to present sufficient evidence of a causal nexus between the mental health condition and the State's concerns. Instead, we vacated the order because the trial court's findings were deficient and the trial court failed to indicate which definition of "grave disability" applied to M.K. *M.K.* (unpublished portion) at ¶ 23. We made no holding regarding the sufficiency of the State's evidence. *Id.* Here, the trial court specifically designated which of the alternative definitions of grave disability applied and made an explicit finding to that effect.

require funding, housing support, and continued mental health care. V.S. also required assistance with bowel and bladder care and this would be an immediate concern upon V.S.'s release. This testimony was uncontroverted and demonstrates that without support V.S. would be unable to meet her basic needs of subsistence.

Drake's testimony also established a causal nexus between V.S's mental health condition and her care needs. Drake noted her primary concern was that despite V.S.'s improvement, "she doesn't see the world the same way that the treatment team does." VRP at 78. Prior to the order compelling treatment with antipsychotic medications, V.S. was combative and uncooperative, and she refused blood sugar testing and insulin for her diabetes. Drake cautioned that if V.S. stopped taking these antipsychotic medications, V.S. may decompensate to the state she was in prior to her admission at Western State. Without continued treatment and support, V.S. faced substantial risks of serious harm as a result of her mental health condition that prevented her from understanding her own care needs and impeded effective treatment.

Accordingly, substantial evidence supports the lower court's finding that V.S. would be unable to meet her basic needs as a result of her mental health condition and so supports the trial court's conclusion that V.S. continued to be gravely disabled. *See LaBelle*, 107 Wn.2d at 209.

CONCLUSION

The trial court did not err in extending V.S.'s involuntary treatment until the less restrictive alternative became available. Because the court extended V.S.'s involuntary treatment exclusively on the "gravely disabled" commitment standard under RCW 71.05.320(4)(d), the State was not required to present evidence sufficient to prove that V.S. also posed a "likelihood of serious harm" under RCW 71.05.320(4)(a) or (b). The State did present substantial evidence sufficient to support

the court's conclusion that V.S. continued to be gravely disabled as a result of her mental health condition and required continued support resulting from her inability to meet her basic needs. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

SUTTON, J.