[No. 24230-3-II. Division Two. January 7, 2000.]

JUNE MORGAN, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*Thomas Huber Grimm* of *Inslee Best Doezie & Ryder, P.S.*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Teresa Bowles Otsubo, Assistant*, for respondent.

BRIDGEWATER, C.J. — June Morgan appeals the superior court's affirmance of the Department of Social and Health Services' (DSHS) revocation of her license to run a foster care home. We affirm.

June Morgan had been a licensed foster care provider for nearly five years when DSHS revoked her license in 1994. In the letter notifying Ms. Morgan of the revocation, DSHS listed numerous incidents that had been reported over the years and placed particular emphasis on three incidents: (1) leaving a 14-year-old developmentally delayed child at a skating rink without adult supervision; (2) using profanity with the children; and (3) slapping one of the children.

Ms. Morgan appealed DSHS's decision and the decision was affirmed by an administrative law judge (ALJ). The ALJ's decision was then affirmed upon internal review by DSHS and by the superior court, which held that the findings of fact are supported by substantial evidence and the conclusions of law are not erroneous.[1] Ms. Morgan timely appealed.

"Under the Administrative Procedure Act, a reviewing court may reverse an agency's adjudicative decision if, inter alia: (i) the agency erroneously interpreted or applied the law; (ii) the agency's decision is not supported by substantial evidence; or (iii) the agency's ruling is arbitrary or capricious." *Aponte v. Department of Soc. & Health Servs.*, 92 Wn. App. 604, 615, 965 P.2d 626 (1998) (footnotes omitted) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993) and RCW 34.05.570(3)(d), (e), (i)), *review denied*, 137 Wn.2d 1028 (1999). The party challenging an agency's action bears the burden of demonstrating the invalidity of the decision.

---

[1]Initially on review, the superior court remanded the case to the ALJ to determine whether Jeff T. lied on the stand. The ALJ determined on remand that it did not matter if he had lied, because even without his testimony, the decision remained unchanged. The superior court then affirmed the ALJ's decision.

RCW 4.05.570(1)(a). Findings of fact are reviewed to determine if they are supported by substantial evidence, RCW 34.05.570(3)(e), and conclusions of law are reviewed de novo to determine if the reviewing judge correctly applied the law, *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983).

## I. FINDINGS OF FACT

The administrative law judge made the following affirmative findings of fact:[2]

(1) Ms. Morgan had accepted a 14-year-old developmentally delayed child, Chanda S., for respite care. Chanda functioned at the level of an eight- or nine-year-old. During the weekend, Ms. Morgan's partner took Chanda and several other children under their care to the skating rink and left them there alone. Neither Ms. Morgan nor her partner contacted skating rink personnel to tell them the children were being left in their care. The ALJ found that Ms. Morgan "acquiesced in the partner's placing of Chanda in charge of the children at the skating rink." While the children were alone at the rink, Chanda lost consciousness and one of the other children called Ms. Morgan, who went to the rink to accompany Chanda to the hospital.

This finding is supported by substantial evidence. Ms. Morgan testified that she left Chanda and the other children at the skating rink alone. Chanda's mother testified that she left Chanda with Ms. Morgan for respite care. She said that she did not know that Ms. Morgan would leave Chanda unattended and would not have agreed to it. Doctors believed that Chanda had suffered a seizure and then lost consciousness.

(2) Ms. Morgan called the children "bitch." Ms. Morgan admitted that she "told Violet [C.] to quit 'acting like a little bitch' in order to get the child's attention." This finding is supported by substantial evidence.

---

[2]Although there were other findings, we refer only to the findings that were used to support the conclusions.

(3) Ms. Morgan slapped Danny C. on the face "with at least an open hand on numerous occasions." This finding is supported by Danny's testimony. He told the court that he was slapped twice.

(4) Ms. Morgan slapped Violet on one occasion. Danny's testimony that Ms. Morgan slapped Violet constitutes substantial evidence for this finding. Robby also testified that Ms. Morgan slapped Violet.

(5) Ms. Morgan admitted to "occasionally" using swear words in addressing the children to get their attention. This finding is supported by Ms. Morgan's testimony.

(6) Ms. Morgan pulled Robby N.'s ears "to the point that it made him hurt" and pulled his arm "to the degree of pain." She also pulled Danny C.'s ears. Robby testified that Ms. Morgan pulled his ears and that it hurt him. He also saw Ms. Morgan pull Danny's ears. This is substantial evidence for the finding.

(7) The ALJ does not have formal findings that Ms. Morgan kicked the children and pulled their hair, but these findings are within his second conclusion of law. Findings of fact labeled as conclusions of law will be treated as findings of fact when challenged on appeal. *See Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). Robby testified that Ms. Morgan kicked him. This supported the finding. But DSHS concedes that there is no evidence that Ms. Morgan pulled the children's hair. That part of the finding is in error.

## II. Conclusions of Law

The next issues are whether the findings support the conclusions of law and whether the conclusions of law support the ALJ's decision. The ALJ had two reasons for affirming the revocation: (1) "The placing of the child at the skating rink must be defined as 'neglect of a child' pursuant to RCW 26.44.020(12), which is prohibited by WAC 388-73-050 et seq."; and (2) The "profanity directed toward the children, kicking, slapping, hitting, name calling,

ear pulling, hair pulling, extreme punishments . . . violate WAC 388-73-046 and WAC 388-73-048."

DSHS may revoke a foster care license upon proof that the licensee "has failed or refused to comply with the provisions of chapter 74.15 RCW and RCW 74.13.031 or the requirements promulgated pursuant to the provisions of chapter 74.15 RCW and RCW 74.13.031." Former RCW 74.15.130(1)(a) (1989). Thus, each of the reasons given would be legally sufficient in and of itself to support evocation. We will deal with each of these conclusions of law in turn.

## A. Neglect

The rules promulgated pursuant to RCW 74.15 are contained in WAC 388-73. WAC 388-73-010. Those rules provide that DSHS may revoke a license for the following conduct: (1) failure to comply with the provisions of RCW 74.15 and rules contained in WAC 388-15 (WAC 388-73-036(2)); and (2) "[p]ermitting, aiding, or abetting the abuse, neglect, exploitation, or cruel or indifferent care to a person under care" (WAC 388-73-036(2)(c)).[3]

The ALJ's first conclusion, that Ms. Morgan violated WAC 388-73-050 when she left Chanda unsupervised at a skating rink, is not erroneous. RCW 74.15.130(1)(a) states that violation of one of DSHS's regulations is cause for revocation. *See also* WAC 388-73-036. WAC 388-73-050 provides: "Licensees shall protect persons, while in the licensee's care, from child abuse or neglect as defined in RCW 26.44.020(12)." RCW 26.44.020(12) defines "abuse or neglect" as "the injury, sexual abuse, sexual exploitation, negligent treatment, or maltreatment of a child by any person under circumstances which indicate that the child's health, welfare, and safety is harmed . . . ."

Ms. Morgan first contends that it was not negligent to leave Chanda at the skating rink without adult supervi-

---

[3]There are other grounds for revocation listed in WAC 388-73-036 that are not relevant to this case.

sion. "Negligent treatment or maltreatment" is defined by statute to mean the serious disregard of consequences constituting a clear and present danger to the child's health, welfare and safety.[4] Former RCW 26.44.020(16) (1993). The record shows that Chanda functioned at the level of an eight- or nine-year-old. Even without considering Chanda's delicate medical condition, it is negligent to leave an eight- or nine-year-old without adult supervision. In addition to that, her medical condition made her prone to fainting. Although Ms. Morgan claims that Chanda was being supervised by rink personnel, even she does not claim to have informed the employees that she was leaving the children in their care, nor did she let them know how to contact her in case of an emergency. Her behavior was negligent.

Next, Ms. Morgan argues that even if she were negligent, the incident does not meet the definition of RCW 26.44.020(12) because there is no evidence that Chanda's health, welfare or safety was harmed. We disagree. Chanda had a seizure and lost consciousness. Although there is no evidence that Chanda was permanently damaged by this incident, that does not mean that she was not harmed. The fact is she lost consciousness while she was unsupervised and it was at least five minutes before Ms. Morgan was with her. That harm is sufficient to satisfy the definition of RCW 26.44.020(12), i.e., her welfare and safety were harmed because she was placed at risk by being left with persons who did not understand her physical needs. Therefore, there is sufficient evidence to find that Ms. Morgan violated WAC 388-73-050 and this would justify the revocation of her license.

### B. Profanity and Corporal Punishment

The ALJ also found that Ms. Morgan violated WAC 388-

---

[4]Former RCW 26.44.020(16) (1993) provided: "Negligent treatment or maltreatment means an act or omission which evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to the child's health, welfare, and safety."

-73-046 and WAC 388-73-048 by her use of profanity and physical discipline with the children. WAC 388-73-046(2) provides that "[d]iscipline shall be fair, reasonable, consistent and related to the individual's behavior. Cruel and unusual discipline, discipline hazardous to health, and frightening or humiliating discipline shall not be administered." WAC 388-73-048(1) states that corporal punishment is prohibited.

We have previously held that "[c]orporal punishment plainly means physical, as opposed to pecuniary, punishment." *Simmons v. Vancouver Sch. Dist. No. 37*, 41 Wn. App. 365, 372, 704 P.2d 648, *review denied*, 104 Wn.2d 1018 (1985). There is substantial evidence to find that Ms. Morgan used corporal punishment.[5] This alone would justify the revocation of her license. Ms. Morgan argues that her license cannot be revoked for her use of corporal punishment because prior to a 1993 amendment to RCW 26.44.020(12) (which took effect on July 23, 1993), the statute permitted the "reasonable use of corporal punishment." The second finding is not dependent on the definition in RCW 26.44.020(12), but instead is based on her violation of DSHS's specific requirements for foster care licensees, under which any use of corporal punishment is prohibited. Violation of these regulations is a legal basis for revocation. *See* former RCW 74.15.130(a); WAC 388-73--036. A foster care license is a privilege, not a right. The State may impose such requirements as are in the best interests of the children who are in the State's care, including the prohibition against corporal punishment.

In addition, the ALJ's conclusion that Ms. Morgan used profanity with the children is also supported by the record. Her use of profanity to address the children constitutes humiliating discipline in violation of WAC 388-73--046(2). The ALJ did not err by concluding that Ms. Morgan's use of corporal punishment and profanity justified the revocation of her foster care license.

---

[5]This conclusion does not rely in any way on the excluded testimony (Jeff T.) or the hair pulling finding. There is ample evidence without these findings for the conclusion that Ms. Morgan used corporal punishment.

Because the ALJ's findings are supported by substantial evidence, the findings support the conclusions of law, and the conclusions of law follow the law, his conclusion that DSHS properly revoked Ms. Morgan's foster care license is affirmed.

SEINFELD and HUNT, JJ., concur.

Review denied at 141 Wn.2d 1014 (2000).