**FILED**
**APRIL 13, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| HEATHER R. CALABRESE, | ) | No. 38854-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DEPARTMENT OF SOCIAL & | ) | |
| HEALTH SERVICES, ADULT | ) | |
| PROTECTIVE SERVICES, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — The Department of Social and Health Services

(Department) appeals the superior court's reversal of a Board of Appeals (BOA) order

concluding that Heather Calabrese abused her mother, Adele,[1] by the improper use of a

mechanical restraint.

The restraint was a child lock, a double-loop cord that went around each outer door

knob of Adele's double doors to her bedroom. The cord kept Heather's two-year-old son

from opening the bedroom doors from the outside.

---

[1] Because both mother and daughter share the same last name, we refer to them by
their first names. We intend no disrespect.

The BOA review judge found that Adele was incapacitated after her stroke in mid-September 2018 and could not get out of bed or walk without assistance. Substantial evidence supports this finding. Because the child lock did not restrain Adele, who could not walk to her bedroom doors without assistance, we conclude the Department failed to prove the child lock was used against a vulnerable adult. We affirm the superior court and award Heather her reasonable attorney fees and costs on appeal.

FACTS

Heather and her 63-year-old mother, Adele, lived in a two-bedroom home, together with Heather's two-year-old son, Anthony, and two dogs. Adele slept in the master bedroom, which had an attached bathroom, while Heather slept in the other bedroom with her son.

When Adele wanted to rest, she would go into her bedroom and lock the double doors from the inside so Anthony could not enter. Heather told her mother that she did not want to be locked out in case her mother fell and needed help. The two agreed to use a child lock on the outside of the double doors to prevent Anthony from entering the bedroom.

The lock was a double-loop cord that went around each outer door knob of the double doors. The cord had sufficient slack so a person from inside the bedroom could

open the doors slightly, reach through, and pinch a release on the lock that unsnapped the cord so the doors could open.

On September 11, 2018, Adele suffered a stroke. After her stroke, she was unable to sit up in bed or get herself out of bed without assistance.[2] It soon got to a point where she could not walk without falling. From when Adele suffered her stroke until the end of November, Heather called 911 twenty times because her mother often fell and Heather needed assistance to get her back into bed. "It didn't matter how many times I go in there and check on her. The moment I left the room, all the sudden she was on the floor." Clerk's Papers (CP) at 773.

Adele sometimes would call Anthony into her bedroom. Heather did not want Anthony to go in there because the stroke had left her mother incontinent, and she often urinated in her diaper and on the bed sheets. For this reason, Heather continued to use the child lock after her mother's stroke.

Heather's need for help increased after she gave birth to her second child on November 4, 2018, and was restricted to lifting no more than 20 pounds. Heather tried to get help. But no family member was close enough to help. She asked the Department for help but was told nothing could be done.

---

[2] Adele was 5'3" and 230 pounds.

3

In late November 2018, Heather learned of a company named Telecare that connected people with community resources. Heather called and obtained an appointment with Michael Brooks, a peer recovery coach.

Mr. Brooks visited the home and he noticed it was pretty clean. He also noticed the child lock on the outside of Adele's door. It appeared to him that the cord prevented a person inside the bedroom from getting out.[3] Heather told him it was to keep Anthony out of the bedroom. He also saw blankets on Adele's bedroom floor that were wet with urine. At the time, Heather was washing her mother's sheets three times per day, changing her, and bathing her.

Mr. Brooks returned to the home soon after and spoke with Adele. She told him that her daughter would lock her in her room "for hours and days on end." CP at 715. This led Mr. Brooks to report the use of the child lock to the Department's division of Adult Protective Services (APS).

Chris Bjornrud with APS investigated. He spoke with Mr. Brooks, who reported that Heather said the lock was to keep her son from going into the room because the odor of urine would make him sick. Mr. Bjornrud then spoke with Adele. At the time, Adele

---

[3] The record does not show that Mr. Brooks knew the child lock could be unlocked by a person inside the room by slightly opening the doors, reaching through, and pinching the release.

was in the emergency room because she had experienced another fall. When asked about the lock, she did not complain that it kept her in her room. Rather, Adele complained that her daughter "locked her bedroom door from the outside so that [her] grandkids could not get into [her] room" for "hours." CP at 630.

A few days later, Adele was transferred to a skilled nursing facility. There, Mr. Bjornrud supplied Adele with a form declaration and had Adele write her complaint in her own words. In pertinent part, Adele wrote:

> Heather would lock me in my bedroom all day and night. Does not want her 2 ½ yr. old, Anthony, to come into my room. . . . She doesn't understand that I need to see Anthony & spend time with him. . . . I love Anthony! He loves me!

CP at 672.

Mr. Bjornrud later interviewed Heather. She showed him the child lock and explained she used it to keep Anthony from going into the bedroom and stepping in urine.

On July 22, 2019, the Department mailed a notice of substantiated finding that Heather had improperly restrained a vulnerable adult. The notice states:

> On or around the month of November 2018, you regularly used a double looped device to door handles to prohibit entry and exit from the bedroom of a vulnerable adult, locking the vulnerable adult in her room for hours at a time.
>
> APS decided that these actions meet the definition of Improper Use of Restraint in RCW 74.34.020(2)(e).

5

CP at 644.  The notice then quoted the cited statutory language.

Heather requested a hearing to contest the finding.  At the hearing, the Department

called two witnesses, Mr. Brooks and Mr. Bjornrud.  It did not call Adele to testify;

instead, it relied on her handwritten sworn statement.

During the hearing, Heather admitted a picture that showed her son hanging on the

outside door knobs of the double doors to enter Adele's room.  The picture shows the

cord around the doorknobs and the doors slightly open.  Heather testified:

> [T]hat's my son hanging on my bedroom door with the lock in question.
> And you could actually reach through and pinch it and open that.  That's
> one thing I want to stress.  You could reach through between the doors . . . .
> And you can see right there where the [doors are slightly open].

CP at 793.  The Department's attorney asked Heather about the child lock:

> Q.      Is this the same kind of locking device that you put on your
> mom's door?
> A.      Yes.
> Q.      Okay.  Does it adjust?  Does it have, like, ways to adjust it?
> A.      You know, I don't remember.  Alls [sic] I know is we'd lift
> [it] over that[4] and snapped them[5] together.

CP at 801.

---

[4] "That" perhaps refers to the door knobs.

[5] "Them" perhaps refers to each half of the separated cord.

In addition, Heather testified Adele changed after her stroke. She testified that her mother became aggressive, both verbally and physically, that Adele used her cane to strike Anthony and one of the dogs, and that she feared for her and their safety so much that she even locked her own door at night from the inside.

Heather—inconsistent with her claim that Adele posed a threat—also testified that her mother was unable to sit up and get out of bed after her stroke and was unable to walk without falling down. She testified about her many calls to 911 for assistance getting her mother back into bed from mid-September through November. Similarly, Adele's sister testified that she visited Adele at the hospital after Adele's stroke and Adele was unable to get up and move. Also, Adele's brother testified that toward the end of September and early October, his sister "wasn't able to get up and move," and "she was in bed the whole time that I was visiting" her in the nursing home. CP at 804.

The administrative law judge (ALJ) issued an order reversing the Department's finding of abuse, in part finding that Heather used the child lock, not for a prohibited purpose, but because she was concerned for her family's safety.

The Department appealed the ALJ's initial decision to the BOA. A review judge for the BOA issued a decision that declined to adopt most of the initial order's findings

and conclusions. Notably, the review judge found that Heather's testimony was not credible due to its inconsistency:

> Adele could not have been, on the one hand, largely incapacitated and incapable of getting out of bed, and on the other hand, a "terrifying," physical threat to Appellant and her children, day and night. *The preponderance of evidence in the record supports that Adele was more likely than not incapacitated from September to November 2018* and incapable of presenting a significant physical threat to Appellant, Appellant's children, or her dogs.

CP at 33 (emphasis added). The review judge concluded that Heather locked her mother in her bedroom in November 2018 and thereby committed abuse of a vulnerable adult by using a mechanical device to restrict her mother's freedom of movement and to inflict unreasonable confinement on her.

Heather petitioned the Whitman County Superior Court to review the BOA judge's decision and final order. After hearing argument, the court granted Heather's petition, vacated the BOA judge's decision and final order, and ordered the Department to pay Heather's attorney fees.

The Department timely appealed. The parties jointly requested that Heather, the respondent, be permitted to file the opening brief. Because our review is of the BOA judge's final order, not the superior court's ruling, we granted their request.

ANALYSIS

In reviewing an administrative decision, an appellate court sits in the same position as the superior court and applies the Administrative Procedure Act (APA), chapter 34.05 RCW. *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 584-85, 344 P.3d 199 (2015). There are several grounds on which a reviewing court may grant relief from an agency's order following an adjudicative hearing. One ground is that the order is not supported by substantial evidence in light of the entire record. RCW 34.05.570(3)(e). Another is that the agency erroneously interpreted or applied the law. RCW 34.05.570(3)(d).

"Findings of fact are reviewed to determine if they are supported by substantial evidence, and conclusions of law are reviewed de novo to determine if the reviewing judge correctly applied the law." *Morgan v. Dep't of Soc. & Health Servs.*, 99 Wn. App. 148, 151, 992 P.2d 1023 (2000) (citations omitted). The substantial evidence test applies to the agency's findings of fact, in that the findings will be upheld if a fair-minded person would be persuaded by the evidence regarding the truthfulness or correctness of the order. *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 548, 389 P.3d 731 (2017).

Heather raises several arguments why we should reverse the BOA judge's order. We find her second argument dispositive: the Department failed to show that Heather used the child lock to restrict her mother's freedom of movement or confine her.

*What the Department was required to prove*

The Department alleged that Heather committed abuse of her mother under RCW 74.34.020(2)(e). We emphasize by using italics the relevant parts of this subsection:

> (2) "Abuse" means the willful action or inaction that *inflicts . . . unreasonable confinement . . .* on a vulnerable adult. . . . Abuse includes . . . *improper use of restraint against a vulnerable adult . . . .*
> . . . .
> (e) "Improper use of restraint" means the inappropriate use of . . . *mechanical restraints . . .* in a manner that . . . (iii) otherwise constitutes abuse under this section.

Former RCW 74.34.020 (2019). In turn, a "mechanical restraint" means "any device attached or adjacent to the vulnerable adult's body that he or she cannot easily remove that restricts freedom of movement or normal access to his or her body."[6] RCW 74.34.020(14).

---

[6] The parties do not address whether the child lock looped around the outside of Adele's double bedroom doors was "adjacent" to her body so as to restrict her "freedom of movement or normal access to . . . her body." We express no opinion on this issue.

10

Here, the review judge found that Adele was physically incapacitated. It explicitly

accepted the ALJ's finding 4.14. That finding states, in relevant part:

> [F]ollowing her stroke on or about September 11, 2018, Adele needed
> assistance getting up and ambulating, and posed a risk of injury to herself if
> she attempted these actions without assistance.

CP at 10. Heather argues that this finding precludes the notion that the child lock, several

feet away from her mother's bed,[7] restricted her mother's freedom of movement or

confined her in any way.

*Substantial evidence supports finding 4.14*

The Department argues that finding 4.14 is not supported by substantial evidence.

It notes that Heather, at the administrative hearing, testified that her mother could walk 10

feet unaided when she returned from the hospital in mid-September. We have two

responses. First, the review judge found that Heather's statements that her mother could

move about were not credible. Second, testimony from Heather described her mother as

falling whenever she tried to get out of bed after her stroke, and Adele's two siblings

described their sister as unable to get out of bed or move about in September and early

October. We conclude that substantial evidence supports finding 4.14, adopted by the

review judge.

---

[7] *See* picture of Adele's bedroom showing bed and double doors. CP at 209.

11

*Error of law*

In its decision, the review judge concluded that the child lock was a restraint because it locked Adele in her bedroom. This conclusion ignores the definition of "abuse," which requires the restraint be *used against* a vulnerable adult. RCW 74.34.020(2). If Adele was physically incapable of walking to her bedroom doors unaided, she was incapable of leaving her bedroom, even in the absence of the child lock. Thus, the child lock was inconsequential and was not *used against* Adele. We conclude that Heather did not commit abuse of a vulnerable adult because the child lock was not used to restrain her mother, and we reverse the BOA judge's decision and order.

ATTORNEY FEES AND COSTS

Heather requests that we award her reasonable attorney fees and costs on appeal under the "Equal Access to Justice Act" (EAJA), RCW 4.84.340-.360.

"In 1995, the legislature enacted the EAJA, chapter 4.84 RCW, to ensure citizens a better opportunity to defend themselves from inappropriate state agency actions." *Costanich v. Dep't of Soc. & Health Servs.*, 164 Wn.2d 925, 929, 194 P.3d 988 (2008). Under the EAJA, "a court shall award a qualified party[8] that prevails in a judicial review

---

[8] Heather submitted an affidavit of financial need in compliance with RAP 18.1(c) and RCW 4.84.340(5). The Department does not challenge Heather's status as a qualified party.

12

of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." RCW 4.84.350(1).

"Substantially justified means justified to a degree that would satisfy a reasonable person." *Moen v. Spokane City Police Dep't*, 110 Wn. App. 714, 721, 42 P.3d 456 (2002). The standard "'requires the State to show that its position has a reasonable basis in law and fact.'" *Silverstreak, Inc. v. Dep't of Lab. & Indus.*, 159 Wn.2d 868, 892, 154 P.3d 891 (2007) (internal quotation marks omitted) (quoting *Cobra Roofing Serv., Inc. v. Dep't of Lab. & Indus.*, 122 Wn. App. 402, 420, 97 P.3d 17 (2004), *aff'd*, 157 Wn.2d 90, 135 P.3d 913 (2006)). "That is, it need not be correct, only reasonable." *Raven v. Dep't of Soc. & Health Servs.*, 177 Wn.2d 804, 832, 306 P.3d 920 (2013). The relevant factors in determining whether the Department was substantially justified are the strength of the factual and legal basis for the action, not the manner of the investigation and the underlying legal decisions. *Silverstreak*, 159 Wn.2d at 892.

Here, it was apparent to any person viewing the situation in November 2018 that the child lock on the outside of Adele's bedroom doors was not used to restrain her. Adele was incapable of getting out of bed and walking to the doors unaided. She was confined to her room, with or without the child lock. This establishes the truth of

13

Heather's repeated claim that she used the child lock to prevent her toddler from going into her mother's bedroom, which often had urine-soaked sheets and smelled of urine.

We conclude the State has failed to show that its position has a reasonable basis in fact and law. Subject to Heather's compliance with RAP 18.1(d), we grant her request for reasonable attorney fees and costs and similarly deny the Department's request to vacate the superior court's award of attorney fees and costs.

Affirm superior court and award fees and costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____
Pennell, J.

_____
Staab, J.